GEOFFREY HANSEN
Acting Federal Public Defender
GABRIELA BISCHOF
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    415.436.7700
Facsimile:    415.436.7706
Email:         Gabriela_Bischof@fd.org

Counsel for Defendant Smith-Muchmore

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>MARTIN ANTHONY SMITH-MUCHMORE,<br><br>   Defendant. | No. CR 19-00135-WHO<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

## INTRODUCTION

Martin Smith-Muchmore endured a chaotic upbringing that was marked by witnessing violence against those he loved and being the victim of violence himself. He survived that upbringing only to live through an adolescence and youth defined by unhealthy coping mechanisms and resulting bad choices. The trauma that was forced on him and the chaos he generated to deal with it could have been the entirety of his story, but they aren't. Over the nearly three years since his first appearance in federal court, Mr. Smith-Muchmore has gotten sober, obtained mental health treatment and employment, and committed to long term recovery. One objective of the Conviction Alternatives Program (CAP) is to provide structure and incentives that allow participants "to commit to long-term, positive changes in

their behavior and way of thinking."[1] The changes he has made with the help of the program have brought his best self into focus; he is a loving father, a passionate musician, a motivated salesman, and a leader in recovery.

As the Court is aware, these positive changes could not have come about without exceptional effort on Mr. Smith-Muchmore's part. Over 34 months, nearly half of which was as a participant in CAP, Mr. Smith-Muchmore committed to intensive supervision, regular court check-ins, random drug testing, group drug treatment, self-help meetings, cognitive behavioral therapy, and one-on-one counseling, all in addition to the regular activities of daily life, including employment and parenting. Through his own effort, Mr. Smith-Muchmore has earned the opportunity to keep building his life and proved a prison term is not required to reset his course. Accordingly, in light of his extraordinary post-offense rehabilitation and the sentencing goals set forth in § 3553(a)(2), Mr. Smith-Muchmore respectfully requests that the Court sentence him to time served,[2] followed by three years of supervised release.

**DISCUSSION**

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The sentence recommended in the Sentencing Guidelines is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). The court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling

---

[1] *Conviction Alternatives Program (CAP) and Leading Emerging Adults to Develop Success (LEADS) Pilot Program Frequently Asked Question*s, https://cand.uscourts.gov/about/court-programs/cap-frequently-asked-questions/

[2] There is an error in the PSR that undersigned counsel did not catch in the review process. Mr. Smith-Muchmore was arrested on March 28, 2019, and was not released until April 18, 2019. *See* Docket No. 8. Therefore, he has 22 actual days of credit.

this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985).

Accordingly, the Court must consider not only the Guidelines range, but also factors such as the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants.  18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).  In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).

**A. Applicable Guidelines**

Mr. Smith-Muchmore agrees with the summary of the offense conduct and criminal history as set forth in the PSR. However, undersigned counsel disagrees with Probation's calculation of the guidelines and urges the Court to accept the guidelines as set forth in the parties' plea agreement. The disagreement stems from Mr. Smith-Muchmore's two prior convictions for California Health and Safety Code § 11359, possession of marijuana for sale, sustained in 2011 and 2015. *See* PSR 36, 39. Probation has categorized the priors as controlled substance offenses under § 4B1.2, and therefore applied Career Offender guidelines. Because § 11359 is not a controlled substance offense, the correct guidelines are as follows: base offense level 26 pursuant to USSG §2D1.1(c)(7); a two-level increase pursuant to USSG §2D1.1(b)(1), for the possession of a dangerous weapon (firearm); and a three-level decrease, pursuant to USSG §3E1.1, for Acceptance of Responsibility, which yields a total offense level of 25. Combined with his criminal history category of IV, the resulting guideline range is 84 to 105 months.

The Career Offender sentencing enhancement applies to defendants who, while at least eighteen years old, commit a crime of violence or a controlled substance offense, and have "at least two prior

felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). In the Ninth Circuit, a predicate offense under U.S.S.G. § 4B1.1(a) must categorically match to a "controlled substance" listed in the federal Controlled Substances Act. *United States v. Bautista*, 989 F.3d 698 (9th Cir. 2021). In *Bautista*, the Ninth Circuit held that a prior Arizona conviction for attempted transportation of marijuana did not qualify as a controlled substance offense because the Arizona definition of "marijuana" at the time of the prior conviction included hemp, which under current federal law is not a controlled substance.  The definition of marijuana used in § 11359 in 2011 and 2015 is similarly not a match to the current federal definition of "marihuana." Under current California law, only selling "cannabis" is illegal under section 11359, and "cannabis," is defined to exclude "industrial hemp." *See* Cal. Health and Safety Code 11018(a).  Back in 2011 and 2015, however, sale of "marijuana" was illegal under § 11359, which was defined to mean "all parts of the plant Cannabis sativa L., whether growing or not." Cal. Health and Safety Code 11018 (2011; 2015).  It had a few limited exceptions for "mature stalks of the plant," etc., but none for hemp.  *See id.*  These limited exceptions were essentially identical to the federal definition of "marihuana" before the federal government legalized hemp in 2018.  *Compare id.*, *with* 21 U.S.C. 802(16) (2017).

      Thus, in 2011 and 2015, the California definition of "marijuana" did not exclude "hemp," which was legalized only with the passage of the California Industrial Hemp Farming Act, the relevant portion of which went into effect on November 9, 2016.  The Arizona definition of "marijuana" from 2017 likewise did not exclude hemp and was therefore overbroad.  *See Bautista*, 989 F.3d at 704-05.  The same reasoning applies here.  Mr. Smith-Muchmore's priors are overbroad based on the overbroad definition of "marijuana" under the old California definition from the time of his convictions, which included hemp, a substance that is not illegal under the current generic federal definition of marijuana.  Accordingly, § 11359 is not a controlled substance offense, as the Ninth Circuit held in essentially identical circumstances in *Bautista*.

      Probation argues "the definition of the count of conviction is to be used at the time the conviction occurred (in this case, 2011 and 2015)" and therefore, the Ninth Circuit's 2013 decision in *Macias-Carreon v. Holder* that § 11359 is categorically a controlled substance offense, controls the

outcome here. *See* Addendum to the Presentence Report. Probation misunderstands the law. *Bautista* clearly holds that the Guidelines definition of "controlled substance" refers to the federal CSA <u>at the time of sentencing</u>—not at the time of conviction on the aggravating prior.   In *Bautista,* the Ninth Circuit instructed district courts to compare the elements of the crime as they existed when a defendant was convicted of that offense to those of the crime as defined in federal law at the time of federal sentencing. *Bautista*, 989 F.3d at 703 ("Thus, a court must ask whether Bautista's prior crime qualifies as a 'controlled substance offense' under the CSA and the corresponding Guideline *at the time of sentencing*…Indeed, it would be illogical to conclude that federal sentencing law attaches 'culpability and dangerousness' to an act that, at the time of sentencing, Congress has concluded is not culpable and dangerous. Such a view would prevent amendments to federal criminal law from affecting federal sentencing and would hamper Congress' ability to revise federal criminal law.") (emphasis original).  Because the federal CSA's definition of "marijuana" changed in 2018, the Ninth Circuit's 2013 decision in *Macias-Carreon v. Holder*[3] is irrelevant here in 2022, as the Ninth Circuit held in *Bautista*.  *See id.* at 704.  The correct guideline range is 84 to 105 months.

### B. 18 U.S.C. § 3553(a) Factors

Mr. Smith-Muchmore's receipt of narcotics for sale and possession of a firearm and firearm accessories were certainly serious crimes, for which he accepts full responsibility. Yet, this conduct was inextricably linked to the thoughtless attitude of an addict deep in his addiction and of the criminal thinking errors Mr. Smith-Muchmore has worked so hard to correct while in CAP.  While examining the seriousness of the crime and deterrent effect of a potential sentence, this Court can consider "post-crime maturation and self-rehabilitation" at sentencing. See *United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008). The Supreme Court has "made clear that post-sentencing or post-offense rehabilitation—particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct—[is] a critical factor to consider in the imposition of a sentence." *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (citing *Pepper v. United States*, 562 U.S. 476, 491-93 (2011) and *Gall*, 552 U.S. at 59

---

[3] 716 F.3d 1286 (9th Cir. 2013).

(emphasis added)). Such rehabilitation is "the most up-to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a defendant will be deterred from committing another crime. *Pepper*, 562 U.S. at 492 (quoting 18 U.S.C. § 3553(a)(1)).

Mr. Smith-Muchmore has been thoroughly deterred from committing a new crime. His job and his son, two relatively new elements in his life keep him firmly committed to his sobriety and a law-abiding life. But these changes in his life circumstances are only one piece in his ability to remain sober. His most admirable progress has been intangible. Through his time in CAP, he has developed insight into his own needs and weaknesses, showed that he can reach out to others for support, and that he can connect with and support others in turn.

At this point, a custodial sentence would undermine the statutory sentencing goals of deterrence, protecting the public from future crimes of the defendant and providing needed treatment. Sending Mr. Smith-Muchmore to prison at this stage of his recovery would pull him backwards and expose him to criminal elements, including exposure to defendants who have not made similar life-altering changes. Even a short custodial term would undo all that Mr. Smith-Muchmore has accomplished, which is contrary to the goals of sentencing. Three more years of supervision will do more to protect the public than returning him to prison. In light of these circumstances, a sentence of imprisonment would be "greater than necessary" and directly contravene the objectives of 18 U.S.C. § 3553(a).

Moreover, an extended period of supervision is a meaningful punishment. In this case, a sentence of three more years of intensive supervision is not insignificant. It will provide sufficient punishment and deter Mr. Smith-Muchmore from reoffending. As the sentencing court in *Gall* observed, "probation, rather than 'an act of leniency,' is a 'substantial restriction of freedom.'" *Gall*, 552 U.S. at 44. The court went on to explain:

> "[The defendant] will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court. Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term."

*Id*. The Supreme Court concurred, noting that supervisees are "subject to several standard conditions that substantially restrict their liberty." *Id*. at 48. A three-year term of supervised release

would result in nearly six years of total supervision. Mr. Smith-Muchmore requests the conditions of supervision set forth in the PSR in combination with the standard conditions of supervised release. Such conditions will provide sufficient report to keep him committed to his recovery, which is at the core of his risk to recidivate and will also restrict his liberty enough to sufficiently convey the gravity of his offense. Accordingly, a sentence of time served followed by three years of supervised release is a sufficient, but not greater than necessary, punishment under § 3553(a).

## CONCLUSION

For all the reasons set forth above, Mr. Smith-Muchmore respectfully requests that the Court sentence him to time served, followed by three years of supervised release, and a $100 special assessment.

.

Respectfully submitted,

GEOFFREY HANSEN
Acting Federal Public Defender

/s/

GABRIELA BISCHOF
Assistant Federal Public Defender